**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| Y & N BUILDING SUPPLY US LLC, et al, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 24-03593 (RC) |
| | : | | |
| v. | : | Re Document No.: | 12 |
| | : | | |
| UNITED STATES DEPARTMENT OF | : | | |
| HOMELAND SECURITY, et al., | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING PLAINTIFFS' SECOND MOTION FOR PRELIMINARY INJUNCTION**

## I.  INTRODUCTION

This case concerns an H-1B petition filed by Plaintiff Y & N Building Supply US LLC

("Y&N") on behalf of a beneficiary, Plaintiff Lu Sun ("Ms. Sun") (collectively, "Plaintiffs").

Defendant United States Citizen and Immigration Services ("USCIS") initially approved Y&N's

petition, but later revoked its approval due to alleged fraud or misrepresentation by Y&N in the

H-1B application process. Plaintiffs filed suit against USCIS and the United States Department

of Homeland Security ("DHS") (collectively, "Defendants"), contending that the revocation of

Y&N's H-1B petition approval violated the Administrative Procedure Act ("APA"). *See* 5

U.S.C. § 706. Presently before the Court is Plaintiffs' second motion for a preliminary injunction

that would stay the effectiveness of the USCIS's revocation decision and reinstate Ms. Sun to H-

1B status.  Pls.' Mot. Prelim. Inj. at 33 ("Mot."), ECF No. 12; Pls.' Proposed Order, ECF No. 12-

2. As explained below, the Court denies this motion because Plaintiffs have not shown that they

are likely to succeed on the merits of their claims.

## II.  BACKGROUND

### A.  Legal Framework

The Immigration and Nationality Act ("INA") authorizes U.S. employers to petition for foreign workers in specialty occupations through the H-1B visa program. *See* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c)(1). Each fiscal year, a statutory cap limits the number of new H-1B visas to 65,000, with an additional 20,000 for individuals holding U.S. master's or higher degrees. *See id*. § 1184(g). Due to high demand, USCIS conducts a randomized selection process ("lottery") to allocate cap numbers. *See* 8 C.F.R. § 214.2(h)(8)(iii). A foreign worker is not subject to the numerical cap if they have already been counted against the cap within six years prior to the approval of a subsequent H-1B petition. 8 U.S.C. § 1184(g)(7).

Employers seeking to file an H-1B petition (Form I-129) must first submit an online registration on behalf of the foreign worker ("beneficiary") for the H-1B lottery through the USCIS's website. 8 C.F.R. § 214.2(h)(8)(iii)(A)(1). This registration process requires the employer to attest that the registration reflects a legitimate job offer, that a petition will be filed if selected, and that the registrant has not colluded with others to unfairly increase a beneficiary's selection chances. USCIS, H-1B Electronic Registration Process (last updated July 18, 2025), https://www.uscis.gov/working-in-the-united-states/temporary-workers/h-1b-specialty-occupations/h-1b-electronic-registration-process. For an employer to be eligible to file an H-1B petition, its registration "must be properly submitted in accordance with [8 C.F.R. §§ 103.2(a)(1), 214.2(h)(8)(iii)], and the form instructions." 8 C.F.R. § 214.2(h)(8)(iii)(A)(1).

If an employer's registration is selected, the employer can submit an H-1B petition, which USCIS may approve or deny. *Id*. However, petitions based on false or misleading information may be denied or revoked. *See* 8 U.S.C. § 1184(g); 8 C.F.R. § 214.2(h)(11)(iii). In

cases of fraud or willful misrepresentation, any cap number previously allocated to a beneficiary must be recaptured. *See* 8 U.S.C. § 1184(g)(3).

### B. Factual and Procedural Background

On March 13, 2023, Y&N submitted an H-1B registration on behalf of Ms. Sun. Mot. at 5; Ex. A at 12, ECF No. 3-2. A different company, SB HVAC Services Corp ("SB"), also submitted an H-1B registration for Ms. Sun. Mot. at 5. A paralegal, Echo Wang ("Ms. Wang"), filed both Y&N and SB's registrations with USCIS. *Id.* In submitting the H-1B registration, Y&N attested under penalty of perjury that it had "not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in [its] submission." Ex. B at 2, ECF No. 16-2. On March 26, 2023, USCIS selected from the lottery Y&N's registration for Ms. Sun. Mot. at 5.

On May 26, 2023, Y&N submitted an H-1B petition for Ms. Sun, seeking to classify her as a temporary worker in a specialty occupation. Ex. B at 1. USCIS approved the petition on June 29, 2023. *Id.* On September 19, 2024, however, USCIS issued a Notice of Intent to Revoke ("First Revocation Notice"), citing evidence indicating that Y&N collaborated with another entity, SB, to submit multiple registrations to unfairly increase Ms. Sun's chances of lottery selection. Ex. A at 78. Specifically, the First Revocation Notice identified overlapping IP addresses; shared use of the same attorney, email address, and mailing address; as well as support letters from both companies that were nearly identical, among other things. *Id.* at 81–82.

On October 22, 2024, Y&N responded to the First Revocation Notice, denying the allegations that Y&N had colluded with SB to unfairly increase Ms. Sun's selection chances. Ex. B at 1. In support, Y&N submitted a counsel brief; declarations by Ms. Sun, SB's Manager

Houqiang Deng, and attorney Anze Zhang; Ms. Sun's 2023 W-2 Form; and SB's job offer to Ms. Sun. *Id.*

USCIS revoked approval of Y&N's petition on November 19, 2024 ("First Revocation"). *Id.* On December 23, 2024, Plaintiffs filed a complaint against Defendants, claiming that the First Revocation violated the APA. Compl., ECF No. 1. Plaintiffs also filed a motion for preliminary injunction. ECF No. 3. Shortly thereafter, USCIS agreed to reinstate the petition's approval while USCIS re-reviewed the petition, and the case was stayed pending that review. *See* Pls.' Mot. Stay, ECF No. 8. Plaintiffs withdrew their first motion for preliminary injunction. ECF No. 7.

On March 24, 2025, while the case was stayed, USCIS issued a second Notice of Intent to Revoke. Ex. B at 1. The USCIS again revoked the petition on August 11, 2025 ("Second Revocation"). *Id.* First, USCIS determined that Y&N collaborated with another individual, entity, or organization to submit multiple registrations in an attempt to unfairly increase Ms. Sun's chances of selection. *Id.* at 1–2. USCIS also noted that Ms. Wang, a paralegal, had submitted the registration on Y&N's behalf, despite not being an authorized representative or Y&N's employee. *Id.* at 3. The form instructions had indicated that registrations had to be filed by the entity or its authorized representative. *Id.* Thus, Y&N's registration was invalid, as the regulations require applicants to follow form instructions. *Id.* According to the agency, Y&N therefore lacked a valid, selected registration to file an H-1 B cap-subject petition on behalf of Ms. Sun. *Id.*

Second, USCIS determined that Y&N had willfully misrepresented a material fact in its H-1B petition. *Id.* at 4. The agency noted that the instructions to the petition (Form I-129) advise petitioners that USCIS will deny petitions if petitioners knowingly and willfully misrepresent a

material fact in their petitions. *Id*. The agency explained that, when Y&N agreed to the attestation during the H-1B cap registration process, it certified under penalty of perjury that it had not colluded with another person or entity to submit a registration to unfairly increase the selection chances for the beneficiary in its submission. *Id*. Because Y&N had colluded with another entity to file multiple registrations on Ms. Sun's behalf, Y&N made a false attestation when registering Ms. Sun for the H-1B cap lottery, thus resulting in an improper registration. *Id*. Yet, Y&N filed an H-1 B petition for Ms. Sun, claiming eligibility to file such a petition based upon a properly submitted registration, despite knowing that Y&N's attestation was inconsistent with the facts. *Id*.

    Citing collusion and willful misrepresentation, USCIS revoked the petition. As a result, the H-1B cap number associated with Ms. Sun was also revoked pursuant to 8 U.S.C. § 1184(g)(3). *Id*. at 4. Accordingly, Ms. Sun was no longer exempt from the cap based on the original petition's approval.

    After the Second Revocation, Plaintiffs filed a First Amended Complaint and a second motion for a preliminary injunction on August 25, 2025. ECF No. 11; Mot. In their motion, Plaintiffs claim that the Second Revocation violated the APA. *See, e.g*., Mot. at 13. Plaintiffs also assert that they will face irreparable harm if the Court does not grant the preliminary injunction as Ms. Sun will lose her H-1B status and is in imminent peril of being deported and continuing to employ her would be unlawful. *Id.* at 31. Moreover, they argue that a balance of the equities and the public interest support injunctive relief because such relief would restore Ms. Sun's lawful status and she will be able to begin new employment. *Id.* at 32.

### III.  JURISDICTION

Before turning to Plaintiffs' preliminary injunction motion, the Court briefly addresses a jurisdictional challenge Defendants raise. Defendants assert that Ms. Sun lacks standing to challenge the Second Revocation because she was the beneficiary of the petition, which her prospective employer Y&N submitted on her behalf. Defs.' Opp'n at 12 ("Opp'n"), ECF No. 14. Defendants contend that Ms. Sun's injuries are not traceable to the actions of USCIS but are instead traceable to Y&N's actions. *Id*. ("Had [Y&N] not colluded to unfairly increase the chances of Sun's selection in the H-1B lottery in violation of applicable law and regulations, USCIS would not have revoked the petition approval on that basis."); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (holding that to satisfy Article III standing, a plaintiff must have an injury in fact that is fairly traceable to the challenged conduct of the defendant). But the Court need not address whether Ms. Sun has standing because Defendants do not dispute that Y&N has standing to challenge the revocation. And it is well established that as long as one plaintiff has standing to raise a claim, the Court need not consider whether other plaintiffs have standing to raise the same claim. *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 9 (D.C. Cir. 2017) ("If constitutional standing can be shown for at least one plaintiff, we need not consider the standing of the other plaintiffs to raise that claim."). Thus, the Court turns to Plaintiffs' motion for preliminary injunction below.

### IV.  LEGAL STANDARD

#### A.  Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to

suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *id*. at 20). Where a federal agency is the defendant, the last two factors merge. *See Am. Immigr. Council v. DHS*, 470 F. Supp. 3d 32, 36 (D.D.C. 2020). "The moving party bears the burden of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted." *Hosp. Staffing Sols., LLC v. Reyes*, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

Before the Supreme Court's decision in *Winter*, courts weighed these factors on a "sliding scale," allowing "an unusually strong showing on one of the factors" to overcome a weaker showing on another. *Davis v. Pension Benefit Guar. Corp*., 571 F.3d 1288, 1291–92 (D.C. Cir. 2009). "Both before and after *Winter*, however, one thing is clear: a failure to show a likelihood of success on the merits alone is sufficient to defeat the motion." *Am. Oversight v. Hegseth*, No. CV 25-883, 2025 WL 1721995, at *3 (D.D.C. June 20, 2025) (citing *Ark. Dairy Coop. Ass'n v. USDA*, 573 F.3d 815, 832 (D.C. Cir. 2009)).

### B.  Administrative Procedure Act

Under the APA, the reviewing court "shall . . . hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). Agency action is arbitrary and capricious if an agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of United States, Inc. v.*

*State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency actions are "not in accordance with law," 5 U.S.C.§ 706(2)(A), if the action "failed to meet statutory, procedural, or constitutional requirements," *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971).

## V.  ANALYSIS

Plaintiffs' request for a preliminary injunction is based on their claim that USCIS's Second Revocation violated the APA. They contend that the decision was arbitrary and capricious, not in accordance with law, and unsupported by substantial evidence. Mot. at 19, 26. They challenge four aspects pertaining to that revocation decision: (1) the form instruction requiring Plaintiff to attest to the bona fides of the H-1B registration; (2) the first sentence of § 103.2(a)(1) requiring Y&N to follow form instructions; (3) the bases underlying the petition's revocation; and (4) the subsequent revocation of Ms. Sun's cap number. *Id.* at 13–29.

However, for the reasons provided below, the Court concludes that Plaintiffs are unlikely to succeed on their claim that USCIS's Second Revocation decision violated the APA under the various grounds they assert. And a failure to show a likelihood of success on the merits alone is sufficient to defeat Plaintiffs' preliminary injunction motion. *See Ark. Dairy Coop. Ass'n*, 573 F.3d at 832. As a result, the Court need not analyze whether Plaintiffs have met their burden as to the other preliminary injunction factors. The Court addresses in turn each of Plaintiffs' arguments as to the likelihood of success on the merits of their claims.

### A.  Attestation Instruction

#### 1.  Notice-and-Comment Requirement

Plaintiffs argue that the attestation instruction is not in accordance with law because it did not comply with the APA's notice-and-comment rulemaking requirement. *See* 5 U.S.C.

§ 553(b),(c); Mot. at 13. Contrary to Plaintiff's assertions, the attestation instruction is not a legislative rule and is therefore not subject to this requirement.

The APA requires that an agency publish notice of proposed rulemaking, including "either the terms or substance of the proposed rule or a description of the subjects and issues involved," 5 U.S.C. § 553(b)(3), and that it "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments," *id.* § 553(c). This requirement, however, applies to legislative, not interpretative, rules. *Id.* § 553(b); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015).

"An 'interpretative rule' describes the agency's view of the meaning of an existing statute or regulation." *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014) (quoting *Batterton v. Marshall*, 648 F.2d 694, 702 n.34 (D.C. Cir. 1980)). "The court's inquiry in distinguishing legislative rules from interpretative rules is whether the new rule effects a substantive regulatory change to the statutory or regulatory regime." *Mendoza*, 754 F.3d at 1021 (quoting *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 6–7 (D.C. Cir. 2011)).

Here, the attestation instruction is an interpretative rule because it does not effectuate any new duties not already created by existing statute or regulation. The attestation instruction reads as follows:

> When you submit your registration(s), you must attest, under penalty of perjury, that all of the information contained in the submission is complete, true, and correct . . . . If USCIS finds that [the] attestation was not true and correct (for example, that a company worked with another entity to submit multiple registrations for the same beneficiary to unfairly increase chances of selection for that beneficiary), USCIS will find that registration to not be properly submitted. Since the registration was not properly submitted, the prospective petitioner would not be eligible to file a petition based on that registration in accordance with the regulatory language at 8 CFR 214.2(h)(8)(iii)(A)(l). USCIS may deny or revoke a petition based on a registration that contained a false attestation and was therefore not properly submitted. Furthermore, USCIS may also refer the individual or entity who

submitted a false attestation to appropriate federal law enforcement agencies for investigation and further action as appropriate.[1]

Ex. B at 2.

This instruction informs the applicant that when submitting a registration, the applicant must confirm that all the information provided is true and accurate under penalty of perjury. If USCIS determines that the attestation was false—such as finding that employers are collaborating to boost selection chances—the agency will consider the registration invalid, making an applicant ineligible to file an H-1B petition based on that registration. And USCIS may deny or revoke the petition and refer the applicant to law enforcement for investigation.

These instructions simply reiterate what has already been established by existing statutes or regulations. First, the final rule establishing the H-1B registration program—which Plaintiffs do not contest was lawfully implemented following notice and comment in 2019—permits only one registration per beneficiary and prohibits the submission of multiple registrations to unfairly boost a beneficiary's chances of selection. *See* 8 C.F.R. § 214.2(h)(8)(iii)(A)(2) ("A petitioner may only submit one registration per beneficiary in any fiscal year. If a petitioner submits more than one registration per beneficiary in the same fiscal year, all registrations filed by that petitioner relating to that beneficiary for that fiscal year may be considered invalid.").

Second, the INA expressly authorizes the denial or revocation of an H-1B petition based on fraud or misrepresentation. 8 U.S.C. § 1184(g)(3). Third, the final rule empowers USCIS to collect sufficient information to prevent abuse of the registration system, such as "[the]

---

[1] The attestation states: "I further certify that this registration (or these registrations) reflects a legitimate job offer and that I, or the organization on whose behalf this registration (or these registrations) is being submitted, have not worked with, or agreed to work with, another registrant, petitioner, agent, or other individual or entity to submit a registration to unfairly increase chances of selection for the beneficiary or beneficiaries in this submission." Mot. at 14; Ex. B at 2.

completion of an attestation." Registration Requirement for H-1B Petitions, 84 Fed. Reg. 888-01, 900 (Jan. 31, 2019) (to be codified at 8 C.F.R. pt. 214); *see* 8 C.F.R. § 214.2(h)(2)(i)(G). Fourth, USCIS has statutory and regulatory authority to investigate the accuracy of information submitted in H-1B filings and enforce immigration laws. Registration Requirement for H-1B Petitions, 84 Fed. Reg. at 904; *see also* 8 U.S.C. §§ 1103(a)(1), 1104(a) (describing the power of the Secretary to enforce immigration law and delegate such enforcement); *DHS Delegation* 0150.1(II)(I) (June 5, 2003) (delegating immigration law enforcement to Bureau of Citizenship and Immigration Services, now known as USCIS); 8 C.F.R. § 214.2(h)(2)(i)(G) ("If USCIS believes that related entities . . . may not have a legitimate business need to file more than one H–1B petition on behalf of the same alien . . . USCIS may issue a request for additional evidence"). Finally, regulations require applicants and petitioners to follow form instructions when submitting filings to USCIS. 8 C.F.R. § 103.2(a)(1); § 214.2(h)(8)(iii)(A)(1).

Thus, the attestation instruction "merely tracks preexisting requirements and explain[s] something the statute or regulation already required" and is therefore an interpretative rule. *Mendoza*, 754 F.3d at 1021. The instruction was therefore not subject to the APA's notice-and-comment requirement, and Plaintiffs' argument to the contrary is therefore unlikely to succeed.

## 2. Adoption of Attestation Instruction

Plaintiffs next assert that USCIS's adoption of the attestation instruction was arbitrary and capricious because the agency failed to articulate a reason for its adoption. Mot. at 16–17. To be sure, "when an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it." *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017). Specifically, the agency must provide a "reasoned analysis indicating that prior policies

and standards are being deliberately changed, not casually ignored." *Lone Mountain Processing, Inc. v. Sec'y of Lab.*, 709 F.3d 1161, 1164 (D.C. Cir. 2013). "Failing to supply such analysis renders the agency's action arbitrary and capricious." *Id.* Contrary to Plaintiffs' assertions, however, the attestation instruction is consistent with established USCIS policy and efforts to combat fraud in the H-1B process.

When establishing the H-1B registration program, the agency explained that it was taking steps "to prevent speculative or frivolous registrations," including "requir[ing] registrants to attest that they intend to file an H-1B petition for the beneficiary in the position for which the registration is filed." Registration Requirement for H-1B Petitions, 84 Fed. Reg. at 903; *see also id.* at 908 ("DHS will be putting measures in place to discourage non-meritorious registrations and will take appropriate action against those who do file non-meritorious registrations."). The agency further explained that collecting certain information during the registration process, such as an attestation, "would limit potential fraud and abuse of the registration system." *Id.* at 904. And instituting such anti-fraud measures in the H-1B registration process was consistent with the agency's established practice as to H-1B petitions. *See id.* at 908 ("DHS notes that petitioners are already required to certify, under penalty of perjury, when completing the Form I-129 petition that any supporting documents submitted with the petition are complete, true and correct."). Thus, requiring registration applicants to attest to the validity of the registration was consistent with USCIS's established practice of preventing fraud and abuse in the H-1B visa process. Plaintiffs have not shown that, in adopting the attestation instruction, USCIS departed from or changed existing policy in a manner that would require an explanation for the change.

## B.  First Sentence of § 103.2(a)(1)

Plaintiffs claim that the first sentence of § 103.2(a)(1) is not in accordance with law. Mot. at 17. That sentence states that: "Every form, benefit request, or other document must be submitted to DHS and executed in accordance with the form instructions regardless of a provision of 8 CFR chapter I to the contrary." 8 C.F.R. § 103.2(a)(1). Plaintiffs appear to contend that because the first sentence required Y&N to follow the attestation instruction, which is purportedly not in accordance with law, the first sentence of § 103.2(a)(1) is likewise not in accordance with law. Mot. at 18. But as discussed above, the attestation instruction does accord with law. Plaintiffs' argument thus fails.

Plaintiffs also contend that the agency's adoption in 2016 of § 103.2(a)(1)'s first sentence, requiring applicants to follow form instructions, was arbitrary and capricious. *Id.* at 18. According to Plaintiffs, the agency failed to provide an explanation for adopting that requirement. *Id.* But Plaintiffs' assertion that the agency in 2016 amended § 103.2(a)(1) to include the first sentence is inaccurate. The requirement that applicants or petitioners comply with form instructions has been in place since at least 1964. *See* Miscellaneous Amendments to Chapter, 29 Fed. Reg. 11956, 11956 (Aug. 21, 1964) (to be codified at 8 C.F.R. pts. 103, 204, 206, 214, 264) ("Every application or petition submitted on a form prescribed by this chapter shall be executed and filed in accordance with the instructions contained on the form, such instructions being hereby incorporated into the particular section of the regulations requiring its submission.").

This requirement's language has been modified throughout the years. *See, e.g.*, Expansion of the Direct Mail Program, 59 Fed. Reg. 33903-01, 33905 (July 1, 1994) (to be codified at 8 C.F.R. pts. 103, 245, 245s, 264, 274a) ("Every application, petition, appeal, motion,

request, or other document submitted on the form prescribed by this chapter shall be executed and filed in accordance with the instructions on the form, such instructions, which include where an application or petition should be filed, being hereby incorporated into the particular section of the regulations requiring its submission."). And when the agency modified § 103(a)(1) in 2016, it left the first sentence untouched, but explained that it was revising the language pertaining to fees. U.S. Citizenship and Immigration Services Fee Schedule, 81 Fed. Reg. 26904-01, 26921 (May 4, 2016) (to be codified at 8 C.F.R. pts. 103, 204) ("DHS [proposes] that 8 CFR 103.2(a)(1) be revised to provide that fees are 'generally' not refunded" because "the current regulatory text does not explicitly permit refunds at DHS discretion" but "DHS currently grants such refunds."). It is unclear why the agency was required to explain a change, as Plaintiffs contend, when a change was not, in fact, made.

Although Defendants argued in their opposition brief that the basis for Plaintiffs' argument, that the first sentence had not been adopted in 2016, was inaccurate, Opp'n at 20–21, Plaintiffs do not even mention their § 103.2(a)(1) arbitrary-and-capricious argument in their reply, nor do they address the relevant counterarguments that Defendants raised in their opposition. Courts have consistently construed this type of silence as abandonment of the argument in question. *See, e.g., Wal-Mart Stores, Inc. v. Sec'y of Lab.*, 406 F.3d 731, 736 n.* (D.C. Cir. 2005) (construing moving party's "silence in reply" brief as an indication that the party had "abandoned [its initial] argument"); *Hunter v. D.C. Child & Fam. Servs. Agency*, 710 F. Supp. 2d 152, 157 (D.D.C. 2010) (deeming initial argument for dismissal "abandoned" where defendant's reply brief "d[id] not contest" plaintiff's opposition arguments). Plaintiffs have therefore abandoned their argument that the agency's adoption in 2016 of the first sentence of

§ 103.2(a)(1) was arbitrary and capricious and have thus failed to show their likelihood of success.

### C. Second Revocation of Petition

#### 1. Revocation Based on the Attestation Instruction and § 103.2(a)(1)

Next, Plaintiffs argue that the Second Revocation was arbitrary and capricious and not in accordance with law because the decision relied in part on the first sentence of § 103.2(a)(1) and the attestation instruction—which are themselves purportedly arbitrary and capricious and not in accordance with law. Mot. at 19. As explained above, however, both the attestation instruction and the first sentence of § 103.2(a)(1) are in accordance with law and not arbitrary and capricious. It was therefore not arbitrary and capricious for USCIS to revoke the petition on that basis, nor did it fail to accord with law.

#### 2. Registration Misrepresentation as a Ground for Petition Revocation

Plaintiffs contend that the revocation failed to accord with law because any alleged misrepresentation was contained in the registration, as opposed to the petition itself. Mot. at 19–20. And the regulation permitting revocation based on misrepresentations in registrations, Plaintiffs argue, was not in effect at the time. *Id.* at 20–21; *compare* 8 C.F.R. § 214.2(h)(11)(iii)(A)(2) (2024) (permitting petition revocation if "[t]he statement of facts contained in the petition [or] H–1B registration . . . was not true and correct, inaccurate, fraudulent, or misrepresented a material fact, including if the attestations on the registration are determined to be false"), *with* 8 C.F.R. § 214.2(h)(11)(iii)(A)(2) (2023) (permitting petition revocation if "[t]he statement of facts contained in the petition or on the application for a temporary labor certification was not true and correct, inaccurate, fraudulent, or misrepresented a material fact"). The Court disagrees.

Contrary to Plaintiffs' assertions, USCIS's authority to revoke petitions based on fraud or misrepresentation derives from the INA. 8 U.S.C. § 1184(g)(3). Section 1184(g)(3) of the INA authorizes revocation of a visa or nonimmigrant status premised on fraud or willful misrepresentation and requires that the cap number be restored when a petition is revoked on that basis. *See* § 1184(g)(3) ("If an alien who was issued a visa or otherwise provided nonimmigrant status and counted against the [cap] is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact and such visa or nonimmigrant status is revoked, then one number shall be restored to the [cap].").

And if a registration is premised on fraud or misrepresentation, so too, is the petition. This is because every petitioner must file a registration before filing a petition. 8 C.F.R. § 214.2(h)(8)(iii)(A)(1). If their registration is selected, the petitioner must append a copy of the H-1B Registration Selection Notice to its petition. USCIS, Form I-129 Instructions 8–9, https://www.uscis.gov/sites/default/files/document/forms/i-129instr.pdf. Moreover, "[e]ach benefit request must be properly completed and filed with all initial evidence required by applicable regulations and other USCIS instructions" and "[a]ny evidence submitted in connection with a benefit request is incorporated into and considered part of the request." 8 C.F.R. § 103.2(b)(1). Additionally, the petitioner "must sign his or her benefit request" and "by signing the benefit request, the . . . petitioner . . . certifies under penalty of perjury that the benefit request, and all evidence submitted with it, either at the time of filing or thereafter, is true and correct." *Id*. § 103.2(a)(2). Each petitioner therefore inherently affirms that they are eligible to file a petition based on a valid registration selection.

Here, the registration was founded on a false attestation (that Y&N had not worked with another entity to submit multiple registrations to unfairly increase Ms. Sun's selection chances),

16

rendering Y&N's claim that the petition was supported by a valid registration selection inaccurate. Under such circumstances, USCIS appropriately revoked the petition's approval pursuant to 8 U.S.C. § 1184(g)(3).

Plaintiffs make much of the fact that 8 C.F.R. § 214.2(h)(11)(iii)(A)(2) was amended in 2024 to explicitly include misrepresentation in the H-1B registration as a ground for petition revocation. Pls.' Reply in Supp. Mot. at 12–14 ("Reply"). According to Plaintiffs, "it must be presumed that the USCIS intends its amendments to have real and substantial effects," otherwise the amendment would be "entirely nugatory if USCIS already had the authority to revoke an H-1B petition" based on misrepresentation in the H-1B registration. *Id.* at 13. To the contrary, agencies can, and do, make non-substantive changes to regulations such as, "clarify[ing] or explain[ing] a regulatory term, or confirm[ing] a regulatory requirement, or maintain[ing] a consistent agency policy." *Mendoza*, 754 F.3d at 1021. Plaintiffs further contend that the canon against surplusage also requires the Court to read the amendment as having substantive effect. Reply at 13–14. But it is well established that agencies may make non-substantive rules which "merely track preexisting requirements and explain something the statute or regulation already required." *Mendoza*, 754 F.3d at 1021 (citation modified). Without more, the Court declines to presume such a substantive change.

### 3. Substantial Evidence

Plaintiffs argue that USCIS's conclusion that Y&N and S&B were colluding to unfairly increase Ms. Sun's selection chances is unsupported by substantial evidence. Mot. at 26. Plaintiffs emphasize that Y&N and SB both stated that they had legitimate job offers for the same beneficiary, Ms. Sun. *Id.* at 26–27.

The reviewing court "may not substitute [its] judgment for [the agency's]," but must require only that the agency "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Islamic Am. Relief Agency v. Gonzalez*, 477 F.3d 728, 732 (D.C. Cir. 2007). "The 'substantial evidence' standard requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *FPL Energy Me. Hydro LLC v. FERC*, 287 F.3d 1151, 1160 (D.C. Cir. 2002).

At this preliminary stage, Plaintiffs have not carried their burden of showing that the Second Revocation was unsupported by substantial evidence. First, USCIS did not need to accept Y&B and SB's statements as true; it can investigate the facts in each case to determine if the facts stated in the petition are accurate. *See* 8 C.F.R. § 214.2(h)(2)(i)(G); *see also* 8 C.F.R. § 103.2(b). Indeed, the agency investigated the facts and found that Y&N and SB both: (a) submitted multiple registrations within a 15-minute interval for the same beneficiaries through common IP addresses; (b) employed the services of the same attorney (Anze Zhang) for all the H-1B petitions Y&N and S&B filed for fiscal year 2024 ("FY24"); (c) used the same email address (Anze Zhang's email address) to submit five duplicate H-1B registrations, despite the registrations indicating that Y&N and SB were not represented by an attorney; (d) had the same mailing address, overlapping executive officers, and related principals; and (e) submitted support letters with their FY24 USCIS filings that contained the same language repeated verbatim. Ex. B at 2–3.

Second, the materials Plaintiffs submitted to USCIS in response to the agency's Second Revocation Notice, and which USCIS reviewed, corroborated the close relationship it had suspected between Y&N and SB. In his declaration, SB manager Houqiang Deng ("Mr. Deng")

confirmed that: (a) SB maintained an office within Y&N's suite; (b) Anze Zhang's email address was used to submit duplicate registrations on behalf of both companies; (c) Y&N and SB both made job offers to the same individuals, and (d) Y&N and SB both engaged paralegal Ms. Wang to prepare their registrations. Ex. A at 97–98. According to Mr. Deng, the companies agreed it would be "fastest and cheapest if we both used the same person" to handle the registration process because the companies "worked closely together on many projects." *Id.* at 98.

Finally, Plaintiffs do not appear to contest the facts underlying the Second Revocation decision. Instead, Plaintiffs maintain that the evidence supports a different conclusion: that Y&N and SB both had legitimate job offers for Ms. Sun and therefore a legitimate purpose for filing multiple registrations. In other words, Plaintiffs disagree with what the evidence tends to show. But a court will only invalidate agency action for lack of substantial evidence if "considering the record as a whole, no reasonable factfinder could have made the same finding as the agency." *Finberg v. United States Dep't of Agric.*, 6 F.4th 1332, 1336 (D.C. Cir. 2021).

In revoking the petition, the agency noted that Y&N's explanation for filing multiple registrations (that it had a legitimate business need) was undercut by the fact that, even though the registration submitted by SB for Ms. Sun was also selected, SB did not also file an H-1B petition for her—despite SB attesting in its registration that it intended to do so. Ex. B at 3. Although Mr. Deng alleged that SB did not file a subsequent petition for Ms. Sun because other eligible and authorized workers were available, Ex. A at 98, the agency was not required to credit that rationale, especially in light of considerable evidence to the contrary.

With evidence that Y&N and SB worked closely in tandem to file registrations for the same beneficiaries—which Plaintiffs do not dispute—it was reasonable for the agency to conclude that both companies had colluded to unfairly increase Ms. Sun's selection chances.

Thus, the agency's decision properly "articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Ey v. McHugh*, 21 F. Supp. 3d 49, 55 (D.D.C. 2014) (quoting *State Farm*, 463 U.S. at 43)).

### 4. Filing Multiple Registrations and Selection Chances

Plaintiffs next claim that even if Y&N and SB did not have a legitimate business purpose for filing multiple registrations on behalf of the same beneficiary, the filing of such registrations did not *unfairly* increase Ms. Sun's registration selection. Mot. at 24–25. They claim that the agency's petition revocation on this basis was thus arbitrary and capricious. *Id.* at 24.

To illustrate their point, Plaintiffs emphasize that had two unrelated companies each independently filed an H-1B registration for the same beneficiary without colluding or coordinating—which the agency views as permissible—the beneficiary's selection chances would have effectively doubled. *Id.* at 25. Plaintiffs contend that this scenario mirrors the present case, where Y&N and SB each filed separate registrations on behalf of Ms. Sun based on two job offers, also doubling Ms. Sun's selection chances. *Id.* at 25–26.

But this misses the point. As explained above, the agency reasonably concluded that Y&N and SB did not both have a legitimate business need to file multiple applications on behalf of the same beneficiary, Ms. Sun. As a result, Y&N's collaboration with SB to submit two registrations—without both entities having a legitimate business need to do so—doubled the likelihood that an application on behalf of Ms. Sun would be selected, as compared to a scenario in which only one of the companies had filed a single application. Plaintiffs have not demonstrated that this premise "is so implausible" as to justify setting the agency's decision aside as arbitrary and capricious. *Pharm. Rsch. & Mfrs. of Am. v. FTC*, 790 F.3d 198, 209 (D.C. Cir. 2015) (quoting *State Farm*, 463 U.S. at 43).

5.  Ms. Wang as an Authorized Representative

Plaintiffs argue that the revocation was not in accordance with law because USCIS found, among other things, that the registrations were not submitted by an authorized representative. Mot. at 21. The agency, however, cited this finding as an alternative basis for revoking the petition. Ex. B at 3. And when an agency relies on multiple grounds for its decision, courts "will affirm the agency so long as any one of the grounds is valid" and the agency would clearly have acted on that ground even if the other grounds were unavailable. *Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1149 (D.C. Cir. 2014); *Syracuse Peace Council v. F.C.C.*, 867 F.2d 654, 657 (D.C. Cir. 1989). That is the case here.

After finding that "evidence in the petition" and "public records" showed Y&N colluded to increase Ms. Sun's chances of selection, USCIS noted that Mr. Deng's statements—indicating that both Y&N and SB used paralegal Ms. Wang to submit multiple registrations—also "call[ed] into question the validity of the registrations," that is, whether they were submitted by an authorized representative as required by the form instructions. Ex. B at 3. While USCIS concluded that Ms. Wang did not qualify as an "authorized representative," the decision made clear that its conclusion—that Y&N submitted multiple registrations and engaged in willful misrepresentation—rested on the "totality of the evidence." *Id*. In other words, USCIS would have revoked the petition regardless of if Ms. Wang was an authorized representative or not.

As discussed above, USCIS's revocation decision was reasonably based on evidence that Y&N colluded with SB to unfairly increase Ms. Sun's chances of selection and was therefore valid. Because the revocation rested on this valid ground, the Court need not consider Plaintiffs' arguments as to USCIS's alternative basis for revocation—namely, whether Ms. Wang qualified as an authorized representative. *See BDPCS, Inc. v. F.C.C.*, 351 F.3d 1177, 1184 (D.C. Cir.

2003) (declining to address plaintiff's additional arguments on the invalidity of an alternative ground for the agency's decision, having already upheld the decision's validity on the agency's asserted procedural grounds).

### D.  Cap Number Revocation

Plaintiffs challenge the agency's revocation of Ms. Sun's cap number as arbitrary and capricious. Mot. at 30. Plaintiffs appear to argue that because Ms. Wang or Ms. Sun did not personally make (or believe to be making) material misstatements nor commit fraud in the H-1B process, then Ms. Sun's cap number cannot be revoked. Mot. at 29–30; Reply at 17–18.

But such an assertion is inconsistent with the plain language of § 1184(g)(3), which requires a cap number revocation "[i]f an alien who was issued a visa or otherwise provided nonimmigrant status . . . is found to have been issued such visa or otherwise provided such status by fraud or willfully misrepresenting a material fact." 8 U.S.C. § 1184(g)(3). Nothing in the statute expressly limits cap number revocation to misconduct by a particular party. And courts "ordinarily resist reading words or elements into a statute that do not appear on its face." *See Dean v. United States*, 556 U.S. 568, 572 (2009) (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997)).

Moreover, it would defy common sense to interpret the statute to allow the beneficiary to retain a cap number merely because the fraud or misrepresentation came from the employer petitioner. A visa or nonimmigrant status based on fraud—regardless of which party committed fraud—still constitutes a visa "issued" or status "otherwise provided . . . by fraud." *See* 8 U.S.C. § 1184(g)(3). And when interpreting a statute, "[t]he court must steer clear of outcomes that are both 'contrary to common sense' and 'absurd when considered in the particular statutory context.'" *Media Matters for Am. v. Paxton*, 732 F. Supp. 3d 1, 16 (D.D.C. 2024), *aff'd*, 138

F.4th 563 (D.C. Cir. 2025) (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1068 (D.C. Cir. 1998). The Court will not infer such an odd result "in the absence of any such indication in the statute." *Reiter v. Cooper*, 507 U.S. 258, 267 (1993). Furthermore, allowing individuals to retain their cap number, despite obtaining a cap number premised on fraud, would incentivize the filing of frivolous registrations and petitions—the very abuse the agency is trying to prevent. Registration Requirement for H-1B Petitions, 84 Fed. Reg. at 900. The Court thus declines to read any such limitation into the statute.

To the extent that Plaintiffs argue that Ms. Sun's cap number cannot be revoked because a finding of fraud was unsupported by the evidence, this argument fails. *See* Reply at 18. As explained above, Plaintiffs have not shown that USCIS's finding, that Y&N and SB colluded to file multiple registrations without a legitimate need to do so, is unsupported by substantial evidence.

Plaintiffs also contend that the agency's decision to revoke Ms. Sun's cap number after the Second Revocation was not in accordance with law. Mot. at 27. According to Plaintiffs, § 1184(g)(3) authorizes cap number revocation only if an individual's H-1B visa or nonimmigrant status has been revoked. *Id*. And because only the petition has been revoked, not Ms. Sun's status, Ms. Sun's cap number should not have been revoked. *Id*. at 28. The Court does not find Plaintiffs' argument persuasive.

Section 1184(g)(3) contemplates that status follows from an approved petition. *See* 8 U.S.C. § 1184(g)(3) ("Aliens who are subject to the [cap] shall be issued visas (or otherwise provided nonimmigrant status) in the order in which petitions are filed for such visas or status."). And that the revocation of a petition, in turn, leads to the revocation of nonimmigrant status. *Id*. (If an individual was issued a visa or provided status "by fraud or willfully misrepresenting a

material fact . . . then one number shall be restored to the total number of aliens who may be issued visas or otherwise provided such status under the [cap] in the fiscal year in which *the petition is revoked*.") (emphasis added)); *see also* 8 C.F.R. § 214.1(l)(1) ("An [H-1B] alien . . . may be admitted to the United States or otherwise provided such status for the validity period of the petition."). When status has been revoked due to a revoked petition, the cap number must be restored to the cap limit. 8 U.S.C. § 1184(g)(3). Plaintiffs' interpretation of the statue overlooks how the H-1B process functions in practice—that petition revocation subsequently leads to visa or status revocation—and "read[s] like [an] elaborate effort[] to avoid the most natural meaning of the text." *Patel v. Garland*, 596 U.S. 328, 340 (2022). Plaintiffs have not shown they are likely to succeed on the merits of this claim.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs have failed to show that they are likely to succeed on the merits of their claims. Accordingly, Plaintiffs' Second Motion for Preliminary Injunction (ECF No. 12) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  October 1, 2025                                RUDOLPH CONTRERAS
                                                                United States District Judge